IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: _____

THE CARROLTON OF DUNN, LLC,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

# COMPLAINT

The Carrolton of Dunn, LLC ("Plaintiff" or "Carrolton of Dunn") by and through its attorneys, brings this action against the United States of America ("Defendant"), acting by and through the Internal Revenue Service ("Service"), for a refund of internal revenue taxes totaling $1,148,753.30, plus interest and additional amounts as provided by law.

## PARTIES

1. Plaintiff is a skilled nursing services provider, certified by Medicare and Medicaid, operating in North Carolina. Plaintiff is managed by an affiliated entity, Carrolton Facility Management, LLC ("CFM"). Plaintiff's mission is to provide high quality long-term care services in a home-like environment for the residents and families it serves. Plaintiff's principal place of business is located at 711 Susan Tart Road, Dunn, NC 28334.

2. Defendant is the United States of America.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(1).

4. Venue in this Court is proper under 28 U.S.C. § 1402.

5. This Complaint is timely under 26 U.S.C. §§ 6532 and 7422.

## BACKGROUND

6. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which created the employee retention credit or "ERC," applicable to qualified wages paid for the period March 13, 2020, through December 31, 2020. Pub. L. No. 116-136 § 2301, 134 Stat. 347 (2020). The ERC was extended and amended by sections 206 and 207 of the Taxpayer Certainty and Disaster Tax Relief Act of 2020 ("Relief Act"), enacted as Division EE of the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260 §§ 206, 207, 134 Stat. 3059 (2020), applicable to qualified wages paid for the period January 1, 2021 through June 30, 2021; and by section 9651 of the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, § 9651, 135 Stat. 177 (2021), applicable to qualified wages paid for the period July 1, 2021 through December 31, 2021, and codified at 26 U.S.C. § 3134.

7. An eligible employer is allowed a refundable credit against applicable employment taxes for relevant calendar quarters in an amount equal to a percentage of qualifying wages paid with respect to each employee of such employer for such calendar quarter. CARES Act § 2301(a); Relief Act § 207(a); 26 U.S.C. § 3134(a).

8. The ERC is applied first against employment taxes paid by the employer for the calendar quarter, but if the credit exceeds such taxes, the excess is refunded as an overpayment pursuant to 26 U.S.C. §§ 6402(a) and 6413(b). CARES Act § 2301(b)(3)(A); Relief Act §§ 206, 207; 26 U.S.C. § 3134(b)(3).

### A. Eligible Employer: Suspension of Business Operations

9. An employer is eligible for the ERC if the employer's "operation of the trade or business … is fully or partially suspended during the calendar quarter due to orders from an

appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID–19)." CARES Act § 2301(c)(2)(A)(ii)(I); Relief Act § 206; 26 U.S.C. § 3134(c)(2)(A)(ii)(I).

10. Guidance published in the Internal Revenue Bulletin provides that a business is partially suspended if "more than a nominal portion of its business operations are suspended by a governmental order." *Guidance on the Employee Retention Credit under Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act*, Notice 2021-20, 2021-11 IRB 922, 928.

11. Notice 2021-20 was not promulgated through the notice-and-comment procedures prescribed in the Administrative Procedures Act, 5 U.S.C. § 553.

12. A business may also be partially suspended "as a result of the inability to obtain critical goods or materials from its suppliers because they were required to suspend operations." *Id.*

13. Moreover, a business can be "partially suspended" if governmental orders required the business to make modifications that have "more than a nominal effect on business operations." *Id.* at 930.

### B. Qualified Wages

14. For qualified wages paid for the calendar quarters covering March 13, 2020, through December 31, 2020, the ERC provides a refundable credit against employment taxes for "an amount equal to 50 percent of the qualified wages with respect to each employee of such [eligible] employer for such calendar quarter." CARES Act § 2301(a).

15. For qualified wages paid for the calendar quarters covering January 1, 2021, through September 30, 2021, the ERC provides a refundable credit for "an amount equal to 70 percent of the qualified wages with respect to each employee of such [eligible] employer for

such calendar quarter." Relief Act § 207(b); 26 U.S.C. § 3134(a).

16. The CARES Act, applicable to the fourth quarter of 2020, defined "qualified wages" for an employer with more than 100 full-time employees on average in 2019 as "wages paid by such eligible employer with respect to which an employee is not providing services due to" governmental orders partially or fully suspending the employer's business operations. CARES Act § 2301(c)(3)(A)(i). If an employer had more than 100 full-time employees, then the credit is limited to the employees that could not perform their duties due to the governmental orders partially or fully suspending the employer's business operations. CARES Act §§ 2301(c)(3)(A)(i), 2301(c)(2)(A)(ii)(I).

17. For the first through third quarters of 2021, and for an eligible employer with fewer than 500 full-time employees on average in 2019 whose business was fully or partially suspended, "qualified wages" includes all "wages paid by such eligible employer with respect to an employee during any" quarter, not to exceed $10,000 for any individual employee. Relief Act §§ 207(e)(1), 207(e)(2) (amending the 100-employee limitation under the CARES Act to 500 full-time employees and removing qualified wage limitation); 26 U.S.C. §§ 3134(b)(1), 3134(c)(3)(A)(ii).

18. If an employer began operating in 2020, the employer uses its average number of full-time employees for the months when it was operational in 2020 for purposes of calculating qualified wages. Relief Act § 207(g)(1); 26 U.S.C. § 3134(c)(3)(B); Notice 2021-20, 2021 IRB at 934-35 (applying the same rule under the CARES Act).

## STATEMENT OF FACTS

19. CFM is a management company managing six skilled nursing facilities (the "CFM Facilities"), including Carrolton of Dunn.

20. Prior to October 2020, the CFM Facilities were owned by the same ownership group, but operations were outsourced to a third-party management company not affiliated with Carrolton of Dunn.

21. Starting in October 2020, the current owners of the CFM Facilities took over operations through separate operating companies all managed by CFM.

22. In 2020, approximately 243 full-time employees were employed across all CFM Facilities.

23. Carrolton of Dunn is a licensed and certified skilled nursing facility, with approximately 108 beds during the relevant 2020 and 2021 time periods, eight of which were for assisted living.

24. Carrolton of Dunn provides patient therapy, prescribed treatment plans, and social activities for all patients under the medical advice and care of in-house physicians, nurses, and certified nursing assistants.

25. From March 2020 through September 2021, government orders partially suspended Carrolton of Dunn's business operations. Starting on or before March 10, 2020, North Carolina's Governor, Roy Cooper, issued a series of executive orders relating to the COVID-19 global pandemic, specifically delegating authority to North Carolina's Secretary of the Department of Health and Human Services ("DHHS") to mandate requirements for long term care facilities, including skilled nursing homes. The Secretary of DHHS issued numerous orders requiring long term care facilities to comply with guidance set forth by the Center for Medicare & Medicaid Services ("CMS"), which incorporated Centers for Disease Control and Prevention ("CDC") guidelines.

26. For example, government orders from the State of North Carolina and from CMS

required Carrolton of Dunn to modify its facility to establish isolation units for COVID-positive patients and implement social distancing, which reduced Carrolton of Dunn's overall available square footage and personnel available for normal operations. Per the CDC, Carrolton of Dunn was required to isolate new patients for 14 days and isolate COVID-positive patients in a single room, resulting in capacity constraints. CMS further instructed all long-term care facilities, including Carrolton of Dunn, to restrict patient visitation, resulting in a decrease in patient admissions.

27. Carrolton of Dunn also partially suspended its operations by implementing the requirements promulgated by the Occupational Safety and Health Administration ("OSHA") to mitigate the spread of COVID in the workplace.

28. Carrolton of Dunn's compliance with government orders also contributed to staffing shortages and required Carrolton of Dunn to inflate employee pay and use temporary contractors and employment agencies.

29. Additionally, as a result of government orders, Carrolton of Dunn experienced a shortage of personal protective equipment ("PPE")—which were critical goods—and had to procure PPE at great expense.

30. A series of government orders issued by North Carolina and federal agencies thus caused Carrolton of Dunn to partially suspend its business operations by, among other things, requiring Carrolton of Dunn to modify its facilities and occupancy, restrict patient admission, and adapt to evolving labor laws and regulations.

31. Failure to comply with the series of government orders issued by North Carolina and federal agencies could have resulted in civil penalties and other sanctions against Carrolton of Dunn.

32. On or about September 13, 2022, Plaintiff filed four claims for employment tax refunds based on the ERC, covering the quarters ending December 31, 2020, March 31, 2021, June 30, 2021, and September 30, 2021 (collectively the "ERC Refund Claims"). In total, through the ERC Refund Claims, Plaintiff seeks a refund of $1,148,753.30 plus interest.

33. More than six months has passed since the filing of the ERC Refund Claims.

34. The Service has not disallowed the ERC Refund Claims.

## COUNT ONE: QUARTER FOUR OF 2020

35. Plaintiff incorporates by reference paragraphs one through thirty-four.

36. On September 13, 2022, Plaintiff filed a refund claim seeking an ERC of $34,586.71 for the fourth quarter of 2020. (Exhibit 1, as redacted.)

37. Plaintiff is an eligible employer for the ERC because government orders partially suspended Plaintiff's business operations during the fourth quarter of 2020 within the meaning of the CARES Act and as defined under Notice 2021-20.

38. To the extent that Plaintiff's business operations were not partially suspended during the fourth quarter of 2020 as defined under Notice 2021-20, that Notice is not binding on Plaintiff and does not have the force of law because it was not promulgated through the notice-and-comment procedures prescribed in the Administrative Procedures Act, 5 U.S.C. § 553.

39. Plaintiff is entitled to an ERC and the resulting refund with respect to wages it paid to employees in the fourth quarter of 2020 who were not providing services due to the suspension of business operations under government orders.

40. Plaintiff filed its refund claim for the fourth quarter of 2020 in a timely manner.

41. This suit is timely because Plaintiff files it more than six months after filing its September 13, 2022, refund claim, which the Service has not disallowed.

- 7 -

42. Plaintiff is entitled to a refund of $34,586.71 for the fourth quarter of 2020, plus statutory interest.

## COUNT TWO: QUARTER ONE OF 2021

43. Plaintiff incorporates by reference paragraphs one through thirty-four.

44. On September 13, 2022, Plaintiff filed a refund claim seeking an ERC of $358,661.47 for the first quarter of 2021.  (Exhibit 2, as redacted.)

45. Plaintiff is an eligible employer for the ERC because government orders partially suspended Plaintiff's business operations during the first quarter of 2021, within the meaning of the Relief Act and as defined under Notice 2021-20.

46. To the extent that Plaintiff's business operations were not partially suspended during the first quarter of 2021 as defined under Notice 2021-20, that Notice is not binding on Plaintiff and does not have the force of law because it was not promulgated through the notice-and-comment procedures prescribed in the Administrative Procedures Act, 5 U.S.C. § 553.

47. Plaintiff is entitled to an ERC and the resulting refund with respect to qualified wages it paid employees in the first quarter of 2021.

48. Plaintiff filed its refund claim for the first quarter of 2021 in a timely manner.

49. This suit is timely because Plaintiff files it more than six months after filing its September 13, 2022, refund claim, which the Service has not disallowed.

50. Plaintiff is entitled to a refund of $358,661.47 for the first quarter of 2021, plus statutory interest.

## COUNT THREE: QUARTER TWO OF 2021

51. Plaintiff incorporates by reference paragraphs one through thirty-four.

52. On September 13, 2022, Plaintiff filed a refund claim seeking an ERC of

$397,926.71 for the second quarter of 2021.  (Exhibit 3, as redacted.)

53. Plaintiff is an eligible employer for the ERC because government orders partially suspended Plaintiff's business operations during the second quarter of 2021, within the meaning of the Relief Act and as defined under Notice 2021-20.

54. To the extent that Plaintiff's business operations were not partially suspended during the second quarter of 2021 as defined under Notice 2021-20, that Notice is not binding on Plaintiff and does not have the force of law because it was not promulgated through the notice-and-comment procedures prescribed in the Administrative Procedures Act, 5 U.S.C. § 553.

55. Plaintiff is entitled to an ERC and the resulting refund with respect to qualified wages it paid employees in the second quarter of 2021.

56. Plaintiff filed its refund claim for the second quarter of 2021 in a timely manner.

57. This suit is timely because Plaintiff files it more than six months after filing its September 13, 2022, refund claim, which the Service has not disallowed.

58. Plaintiff is entitled to a refund of $397,926.71 for the second quarter of 2021, plus statutory interest.

## COUNT FOUR: QUARTER THREE OF 2021

59. Plaintiff incorporates by reference paragraphs one through thirty-four.

60. On September 13, 2022, Plaintiff filed a refund claim seeking an ERC of $357,578.42 for the third quarter of 2021.  (Exhibit 4, as redacted.)

61. Plaintiff is an eligible employer for the ERC because government orders partially suspended Plaintiff's business operations during the third quarter of 2021, within the meaning of 26 U.S.C. § 3134(c)(2)(A)(ii)(I) and as defined under Notice 2021-20.

62. To the extent that Plaintiff's business operations were not partially suspended

during the third quarter of 2021 as defined under Notice 2021-20, that Notice is not binding on Plaintiff and does not have the force of law because it was not promulgated through the notice-and-comment procedures prescribed in the Administrative Procedures Act, 5 U.S.C. § 553.

63. Plaintiff is entitled to an ERC and the resulting refund with respect to qualified wages it paid employees in the third quarter of 2021.

64. Plaintiff filed its refund claim for the third quarter of 2021 in a timely manner.

65. This suit is timely because Plaintiff files it more than six months after filing its September 13, 2022, refund claim, which the Service has not disallowed.

66. Plaintiff is entitled to a refund of $357,578.42 for the third quarter of 2021, plus statutory interest on its refund claims.

## JURY TRIAL DEMAND

67. Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a judgment against Defendant for:

    a. A refund in the amount of $1,148,753.30 or such other amount as the Court determines to be refundable, plus statutory interest on that amount as provided by law;

    b. Reasonable litigation and administrative costs, including attorneys' fees, as allowed by law; and

    c. All other further relief the Court deems appropriate.

Dated: November 18, 2024               Respectfully submitted,

*Michael Desmond*
_____
Michael J. Desmond
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   (213) 229-7531
Facsimile:     (213) 229-6531
Email:  mdesmond@gibsondunn.com
State Bar No. 172398 (California)
*Attorney for Plaintiff*
*Pending Notice of Special Appearance*


/S/ E. Winslow Taylor
_____
E. Winslow Taylor
Taylor & Taylor Attorneys at Law, PLLC
1080 West 4th St.
Winston-Salem, NC 27101
Telephone: (336) 418-4745
Facsimile:  (336) 418-4745
Email: winslow@t2legal.com
Bar Number: 45533 (North Carolina)
*Local Civil Rule 83.1(d)*
*Counsel for Plaintiff*


/S/ Daniel R. Taylor, Jr.
_____
Daniel R. Taylor, Jr.
Taylor & Taylor Attorneys at Law, PLLC
1080 West 4th St.
Winston-Salem, NC 27101
Telephone: (336) 418-4745
Facsimile:  (336) 418-4745
Email: dantaylor@t2legal.com
Bar Number: 7358 (North Carolina)
*Local Civil Rule 83.1(d)*
*Counsel for Plaintiff*

- 11 -